## STODDARD v. MIAMI SAVINGS & LOAN CO.
### No. 305.

District Court, S. D. Ohio, W. D. Dec. 24, 1931.

Squire, Sanders & Dempsey, of Cleveland, Ohio, and Craighead, Cowden, Smith & Schnacke, of Dayton, Ohio, for plaintiff.

E. G. Denlinger and R. N. Brumbaugh, both of Dayton, Ohio, for defendant.

HOUGH, District Judge.

The complainant, a citizen of the state of Texas, seeks injunctive relief against the defendant, Miami Savings & Loan Company, a corporation citizen of the state of Ohio, organized and existing under its laws.

On the 12th day of November, 1929, complainant became a depositor of funds in the defendant company, and on three subsequent dates deposited further amounts with the company, all of which were evidenced by certificates of special deposit. The deposits were made and the certificates issued, bearing no due or maturity date, under the by-laws of the defendant corporation. Also, under the provisions of the by-laws of the defendant company, on the 11th day of August, 1931, the complainant presented to the defendant withdrawal notices covering the amounts of said certificates, and the defendant, not having the funds to take up such certificates, accepted and filed the withdrawal notices as of the date presented, pursuant to its by-laws.

The defendant company was chartered in 1887 under the laws of the state as a building and loan company, and presumably adopted its constitution and by-laws and entered business as a building and loan company at that time.

In 1920, and since that time, as an adjunct and addition to its business, the defendant has each year accepted deposits from persons designated as "members of a Christmas Savings Club," announcing the third week in December of each year the formation of a Christmas Savings Club, the members thereof to deposit each week for fifty consecutive weeks a certain amount as agreed to and entered upon an application card, after which the defendant furnished to the member a coupon book evidencing deposits in the club. The depositor became a member of the club upon signing the coupon book.

The rules and regulations provided that the signer would make the payments provided for in his application, that he would not demand or expect withdrawal of any amount until the close of the club period, that he might pay as far in advance as he desired, that the coupon book was not transferable, and if the book was in any way mutilated the member agreed to accept the records of the institution as correct and final.

At the end of the fifty-week period the club closed, and the amounts of the deposits became due and payable. The fund arising from the deposits of the members of the various clubs went into the general fund of the defendant company, and were used by the company as a part of and in the same manner as the funds arising from deposits by other persons upon certificate of special deposit and upon installment passbook deposit, and funds arising from paid-up and running stock purchases.

722

The by-laws provide that money may be received on deposit as the directors of the defendant company may prescribe, or as may be agreed upon at the time of the deposit. If it is desired to deposit money in installments, a passbook is utilized, otherwise a certificate of deposit is issued. The deposits by either method are only transferable upon the books of the company and upon presentment of the certificate or passbook. Under either method, the deposits are known as special deposits. In respect to withdrawals, it is provided that members (that is, stockholders) may surrender at any time their stock and withdraw all deposits, with dividends declared, and depositors may withdraw their deposits and accrued interest, and if the applications for withdrawal of stock or deposits at any time exceed the cash on hand, such applications shall be filed in the order in which they are received, and paid in the order in which they are filed, as fast as the receipts of the association will pay them, with no preference as between members and depositors.

Having filed her notices of withdrawal of the funds covered by her certificates, and the notices of withdrawal having been accepted by the defendant company but not paid to her on account of lack of funds, she now files her bill of complaint, praying for the issuance of an injunction enjoining the defendant company from paying any sums out of its assets and resources prior to the payment in full of the amounts due her, to any members of the Christmas Savings Club.

The case has been submitted to the court upon the pleadings and a stipulated statement of facts, with attached exhibits. It is to be noted that the complainant is a special depositor under the certificate plan, as included in section 15 of the by-laws of the defendant company (Exhibit D), and that her certificates were transferable only on the books of the association; and that her withdrawal notices were filed under section 18 of the by-laws, and that, failing to receive payment of her claims, section 19 of the by-laws fixes her status, that is to say, her applications or notices of withdrawal were filed in the order in which they were received, and are to be paid in the order in which they were filed, as fast as the receipts of the association will pay them. Nor can it be doubted that her status with the defendant company is a contractual one, to be limited and determined by the provisions of the by-laws just mentioned. Wyatt v. German Building & Saving Co., 12 Ohio Dec. N. P. 526; Wolfe v. Conkey Ave. Savings Ass'n, 75 Hun, 201, 27 N. Y. S. 44.

A member of the Christmas Savings Club, upon invitation of the defendant company, files his application card, designates his class, that is, the amount that he will pay weekly, receives a coupon book, accedes to the rules and regulations by signing and agreeing to them, and pays in his money upon the faith of the promise of the defendant company to add interest and pay back to him the total at the expiration of the fifty-week period. His deposit matures at that time, and this relationship between the member and the company is likewise and no less a contract than that of the complainant with the company. This contract, unlike that of the complainant, is not evidenced by a passbook containing sections 15, 18, and 19 of the by-laws, nor by a certificate, upon the back of which is printed the same sections of the by-laws; his coupon book is not transferable upon the books of the association or otherwise; he is conceded no right of withdrawal as is the plaintiff, and his contract matures at the end of a fifty-week period automatically. His contract must stand upon an equal footing with that of the complainant. His contract is different in character, although no doubt, and for aught that is shown, authorized by appropriate action of the defendant's board of directors.

It must be noted that the defendant company is not insolvent, that is to say, there is no suggestion of any insolvency in the record. For the purposes of this case, therefore, it must be considered to be solvent. True, the liquid assets of the company are not such at the present time that the complainant and those others similarly situated, who have filed notices of withdrawal, may be paid and for that reason her pay date is postponed by the terms of her contract until such time as sufficient assets may be converted into liquid form to permit the company to cancel its liability to her. The intermingling of the funds resulting from her deposit and others of her class, with the fund arising from the payments of the members of the Christmas Savings Club, or vice versa, cannot furnish any reason for finding her claim superior or a preference over those of the club members. Under such situation, there is no right for a court of equity to issue an order of injunction which would compel the defendant company to default in the payment of claims which it had in good faith contracted to pay.

The bill of complaint may be dismissed at the cost of the complainant.